# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELONZA JESSE TYLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R. DAVIS, M.D., et al.,<br><br>　　　　Defendants.<br>_____ / | CASE NO. 1:06-cv-00092-AWI-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 39)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Defendants' Motion for Summary Judgment**

**I.    Procedural History**

　　Plaintiff Elonza Jesse Tyler ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint, filed September 15, 2006, against Defendants Davis, Smith, Jackman, Mendoza-Powers, and Madruga for acting with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, during the time Plaintiff was housed at Avenal State Prison. On May 20, 2008, Defendants Smith, Jackman, Mendoza-Powers, and Madruga filed a motion for summary judgment.[1] (Doc. 39.) After obtaining two extensions of time,

///

---

[1] Defendant Davis did not make an appearance in this action until June 9, 2008, and is not a party to the motion for summary judgment. Because Defendant Davis did not move for summary adjudication on the claim against him, the arguments set forth by Plaintiff in his opposition and supplemental opposition relating to Defendant Davis's alleged deliberate indifference are not addressed by the Court.

Plaintiff filed an opposition on September 5, 2008, and a supplemental opposition on September 23, 2008.[2] (Docs. 50, 52.)

## II. Summary of Eighth Amendment Medical Care Claims in Amended Complaint[3]

### A. Claim Against Defendant Smith

On September 4, 2003, while working at his prison job, Plaintiff slipped and injured his left knee, causing severe pain and swelling. Plaintiff was provided with pain medication, a knee brace, and a cane, and at the time of his transfer to Avenal State Prison ("Avenal") on March 24, 2004, was barely able to walk. In May 2004, Plaintiff was designated as mobility impaired and provided with a wheelchair. Plaintiff underwent knee surgery on March 17, 2005.

Defendant Smith, a physician at Avenal, saw Plaintiff following his knee surgery and prescribed physical therapy three times a week for three to four weeks. However, physical therapy was discontinued after one session. On May 12, 2005, Defendant Smith recommended that Plaintiff be transferred to a facility equipped to provide full physical therapy. Plaintiff alleges that Defendant Smith knowingly left him to suffer in pain by intentionally interfering with and abruptly discontinuing Plaintiff's prescribed physical therapy after one session, and by failing to follow through on his recommendation that Plaintiff be transferred. Plaintiff alleges that Defendant Smith ignored his complaints of pain and medical deterioration, complaints which Defendant confirmed through examination. Plaintiff alleges that Defendant failed to provide adequate post-surgical care, and subsequently forced Plaintiff to continue ineffective treatments with Defendant Jackman, a physical therapist, despite observing, confirming, and noting Plaintiff's complaints that the treatments were causing Plaintiff additional pain, swelling, and aggravation. Plaintiff alleges that continuing to send him to physical therapy was not the "proper treatment for a patient with pattelofemoral degeneration with articular surface irregularity . . . ." (Id., 13:10-12.) Plaintiff alleges that Defendant Smith ignored his pleas for outside orthopedic care, and ignored the repeated indications that Plaintiff's

---

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on April 25, 2007. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 14.)

[3] Court document 10.

condition was worsening, causing Plaintiff to suffer unnecessary pain and potentially leaving Plaintiff with permanent injury.

### B. Claim Against Defendant Jackman

After Plaintiff's therapy sessions at California State Prison-Corcoran were discontinued, Plaintiff was directed to start physical therapy with Defendant Jackman, a physical therapist newly hired by Avenal. Defendant Jackman was without an office, physical therapy equipment or aides to assist Plaintiff in his recovery. Plaintiff filed a grievance in an effort to help Defendant Jackman obtain these resources, and then filed a second grievance on August 18, 2005, complaining that his condition was not improving, and his pain was increasing and his injuries were being aggravated under Defendant Jackman's care. Defendant Jackman gave Plaintiff verbal and visual instructions on exercises but failed to ensure that Plaintiff could properly and safely do the exercises unassisted. When Plaintiff asked to be shown the correct way to do the exercises, Defendant Jackman refused because he did not have a safely equipped facility.

Defendant Jackman also failed to adequately document important facts relevant to Plaintiff's medication condition during the therapy sessions, which led Defendant Davis, the Chief Medical Officer, to conclude that Plaintiff's condition was not serious and that Plaintiff might be malingering. Defendant Jackman filed a false report stating that Plaintiff could walk if he wanted to, without any medical evidence to support that statement. Plaintiff alleges that Defendant Jackman failed to adequately record all of Plaintiff's therapy sessions and his progress status. Plaintiff alleges that Defendant provided such cursory, inadequate treatment that it amounted to no treatment at all, and that the treatment was so inappropriate that it amounted to intentional mistreatment likely to aggravate Plaintiff's condition. Plaintiff alleges that Defendant Jackman's mistreatment resulted in new, additional injuries to Plaintiff, including osteoporosis and osteoarthritis in both knees with one surgery scheduled and the possibility of additional knee surgeries after that.

### C. Claims Against Defendants Mendoza-Powers and Madruga

Defendant Mendoza-Powers, who was the acting warden, and Defendant Madruga, who was a medical appeals analyst, were advised of Plaintiff's serious medical condition, and failed to provide Plaintiff with the orthopedic medical care they were directed to provide via the Director's Level

response to Plaintiff's inmate appeal. Plaintiff alleges that their failure to comply with the directive caused him to endure further, unnecessary delays, which led to additional pain and deterioration in Plaintiff's medical condition.

### III. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e). Plaintiff's complaint is verified and will be considered by the Court in resolving Defendants' motion to the extent that it sets forth admissible facts. The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

**IV.     Defendants' Motion**

    **A.     Defendant Smith**

        **1.     Defendant's Position**

Plaintiff underwent surgery on his left knee on March 15, 2005, and Defendant Smith, in addition to other staff members, provided follow-up care, including prescribing physical therapy to rehabilitate Plaintiff's knee. (Doc. 39-2, Def. Undis. Facts 6, 7; Def. Ex. B, Smith Dec., ¶¶10, 11.) Because Avenal did not have a physical therapy program, Defendant Smith recommended Plaintiff be transferred to a medical facility with a physical therapy program, although Defendant Smith was not authorized to actually initiate transfers. (Def. Undis. Facts 8, 9; Smith Dec., ¶¶12, 13.) Plaintiff was scheduled to be sent to Corcoran three times a week for physical therapy, but it was discontinued because Avenal did not have the resources to send Plaintiff to another prison three times a week. (Def. Undis. Facts 10, 11; Smith Dec., ¶¶15, 16.) Defendant denies being responsible for the discontinuation, as he can only recommend that therapy be provided. (Def. Undis. Fact 26; Smith Dec., ¶16.)

When Defendant Jackman was brought in to provide physical therapy in June 2005, Defendant Smith issued a medical chrono for Plaintiff to see Jackman. (Def. Undis. Fact 12; Smith Dec., ¶17.) When Plaintiff reported that he was still experiencing pain and the physical therapy was not working, and requested a transfer to a medical facility, Defendant told him that the transfer was still pending and continued to provide him with medical treatment for his knee until he transferred to the California Medical Facility in December 2005. (Smith Dec., ¶¶18-21.)

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin at 1060 (internal quotations omitted)). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

A *complete* denial of medical care is not required to show deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (emphasis added). "The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care." Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). "[M]edical staff must be competent to examine prisoners and diagnose illnesses," and must either "be able to treat medical problems or to refer prisoners to others

6

1 who can." Id. Further, treatment decisions based on budgetary concerns do not shield prison
2 officials from liability for deliberate indifference. Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.
3 1986).

4     In this instance, the Court finds that Defendant Smith has not met his burden as the moving
5 party. Defendant Smith was one of Plaintiff's treating physicians following Plaintiff's knee surgery
6 until the time of Plaintiff's transfer out of Avenal. Defendant Smith has submitted no evidence
7 identifying Plaintiff's medical condition and the proper course of treatment for such an injury. At
8 most, the Court has before it the vague attestations that Plaintiff had surgery on his knee, Defendant
9 determined that physical therapy was appropriate following surgery, Defendant recommended
10 Plaintiff be transferred to an institution with a physical therapy program, and Defendant issued a
11 chrono for Plaintiff to see Defendant Jackman when he was hired by Avenal as a physical therapist.

12     Although Defendant attests that he provided Plaintiff with treatment for his knee until
13 Plaintiff was transferred, Defendant did not submit evidence of what that treatment was, other than
14 the physical therapy referral, and did not tender his expert opinion regarding the appropriate course
15 of treatment for Plaintiff's condition and any conclusion that the treatment provided was adequate
16 for that condition. The evidence that Defendant was not responsible for discontinuing Plaintiff's
17 therapy at Corcoran and did not have the authority to initiate a transfer do not entitle Defendant to
18 summary judgment on Plaintiff's claim that Defendant knowingly disregarded an excessive risk to
19 Plaintiff's health by failing to provide appropriate and adequate post-surgical medical care. In the
20 absence of any specific evidence on the nature of Plaintiff's injury and the appropriate course of
21 treatment, the Court cannot conclude that this is merely a disagreement between Plaintiff and
22 Defendant over the course of treatment chosen. The Court finds that Defendant is not entitled to
23 judgment, and recommends denial of his motion.

24     **B.**    **Defendant Jackman**
25         **1.**    **Defendant Jackman's Position**
26 Defendant Jackman provided physical therapy at Avenal from June 6, 2005, to November
27 30, 2005, and was provided a room to conduct physical therapy, although the location varied because
28 the rooms were also used by others at various times. (Doc. 39-2, Def. Ex. C, Jackman Dec., ¶¶3-5.)

Plaintiff was referred to Defendant Jackman for pain and swelling following arthroscopic knee surgery. (Id., ¶8.) Defendant's primary responsibility was to help Plaintiff restore his function, which would hopefully reduce the pain. (Def. Undis. Fact 30; Jackman Dec., ¶16.)

Defendant Jackman provided physical therapy to Plaintiff on three occasions, June 17, 2005, June 22, 2005, and July 8, 2005. (Jackman Dec., ¶¶6, 7, 19, 25.) On the first visit, Defendant examined Plaintiff in his wheelchair because Plaintiff stated he had difficulty standing and could not walk due to the pain. (Id., ¶¶7, 9.) Defendant Jackman noted almost no swelling in the left knee, and full knee extension and good patella mobility. (Id., ¶¶10-11.) Defendant found no difference in girth, heat, color, or other objective finding between the left and right knees, other than the surgical incision site. (Id., ¶12.) Defendant Jackman would have expected some difference in joint puffiness, joint atrophy, stiffness with decreased range of motion, heat, or other category, but found none. (Id., ¶13.)

Defendant Jackman explained to Plaintiff that the forms of therapy he expected, such as hot packs, whirlpools, and electrical stimulation, that used to be so prevalent in physical therapy settings were no longer the standard of care in managed health care because they were not cost effective and tended to be more palliative. (Def. Undis. Fact 29; Jackman Dec., ¶¶14-15.) Defendant Jackman explained that the current medical model focused on function. (Jackman Dec., ¶16.) Plaintiff was visibly upset, and Defendant felt the safest course of treatment was to start him on isometric quad sets, both seated and supine versions, which Defendant demonstrated. (Def. Undis. Fact 30; Jackman Dec., ¶¶15, 17.) Plaintiff was instructed not to push into pain, and that if done correctly, Plaintiff should over time be able to increase his function without increasing pain levels. (Jackman Dec., ¶18.)

Defendant Jackman saw Plaintiff a second time on June 22, 2005, at which time Plaintiff was upset because he had made little progress with his mobility. (Id., ¶¶19-20.) Defendant Jackman noted no increased swelling. (Id., ¶21.) Plaintiff told Defendant he was not performing his exercises. (Id., ¶21.) Plaintiff was not receptive to Defendant's suggestions on properly rehabilitating his knee and was disappointed he was not receiving the same level of care as a professional athlete. (Id., ¶22.) Defendant Jackman again informed Plaintiff that his primary

responsibility was to help Plaintiff restore function with the goal of pain reduction, and to continue the exercises unless he experienced pain. (Id., ¶¶23-24.)

Defendant Jackman saw Plaintiff for the third and final time on July 8, 2005. (Id., ¶25.) Plaintiff repeatedly reported increased pain while Defendant repeatedly instructed him not to push into pain. (Id., ¶26.) Defendant Jackman concluded that Plaintiff would benefit from a second opinion and possibly a transfer to another prison with a more formal clinic that would allow a hands on approach. (Id., ¶26, Attach. C.)

### 2. Discussion

The Court finds that Defendant has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Plaintiff was referred to Defendant Jackman for physical therapy following knee surgery, and Defendant Jackman's involvement in Plaintiff's post-surgical care was necessarily limited to providing that therapy. Defendant Jackman's involvement was further limited to three sessions over a three week period. In order to raise a triable issue of fact on his Eighth Amendment claim, Plaintiff must proffer evidence that Defendant Jackman "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer, 511 U.S. at 837. Because this situation involves a disagreement between Plaintiff and Defendant Jackman over the adequacy and appropriateness of the therapy provided, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986).

Plaintiff has not submitted any admissible evidence that the course of treatment prescribed by Defendant Jackman was medically inappropriate and led to further injury to Plaintiff's knees. Although Plaintiff may provide his opinion on things within a layperson's knowledge, such as pain or swelling, Plaintiff is not qualified to render an opinion that the exercises prescribed were medically inappropriate or inadequate or that the exercises led to further injuries such as osteoporosis and osteoarthritis. Although Plaintiff may have disagreed with the very conservative course of physical therapy provided by Defendant Jackman, that is insufficient to establish an Eighth Amendment violation. Further, Plaintiff's disagreement with Defendant Jackman's assessment of his condition and his ability to progress and walk do not support an Eighth Amendment claim. In the absence of any evidence that Defendant Jackman knowingly disregarded an excessive risk to Plaintiff's health, Defendant is entitled to summary adjudication on Plaintiff's claim against him.

### C. Defendant Mendoza-Powers

#### 1. Defendant Mendoza-Powers' Position

Defendant Mendoza-Powers became the acting warden at Avenal on February 28, 2005, and became warden in June 2006. (Def. Ex. E, Mendoza-Powers Dec., ¶3.) Defendant does not recall Plaintiff's inmate appeal, and was not aware of Plaintiff's concern over receiving an appointment with a medical specialist. (Def. Undis. Fact 32; Mendoza-Powers Dec., ¶¶4, 6.) The Director's Level response which ordered that Plaintiff be seen as expeditiously as possible was directed to the Chief Medical Officer and the Office of the Chief Deputy Warden, and Defendant denies any involvement in Plaintiff's situation. (Id., ¶¶5, 6 & Attach. A.)

#### 2. Discussion

Plaintiff's claim against Defendant Mendoza-Powers arises from his allegation that Defendant was ordered to provide orthopedic medical care by the Director's Level but failed to comply with that directive. (Amend. Comp., 16:25-18:13.) The evidence submitted demonstrates that the directive was issued to the Chief Medical Officer and the Chief Deputy Warden's Office rather than the warden. (P. Ex. Q, pp. 135-137; Def. Ex. E, Attach. A.) Although Plaintiff purports to raise disputed issues of fact as to Defendant Mendoza-Powers, Plaintiff's exhibits demonstrate that the Director's Level review of his appeal and the subsequent directive involved communication

with the Chief Medical Officer and the Chief Deputy Warden's Office. (Opp., 21:6-23:25; P. Ex. Q.) In the absence of any evidence that Defendant Mendoza-Powers was ordered to provide Plaintiff with an orthopedic consult or was otherwise involved with Plaintiff's medical care relating to his knee, Defendant is entitled to judgment as a matter of law.

In his supplemental opposition, Plaintiff submits additional exhibits that he contends demonstrate Defendant Mendoza-Powers knew of his serious medical needs. (Doc. 52, 2:16-3:5.) The exhibits cited to by Plaintiff are an inmate appeal submitted on September 7, 2005, in which Plaintiff states that Defendant, as the overseer of Avenal, is in violation of the American with Disabilities Act, and Plaintiff's petition for writ of habeas corpus, dated November 9, 2005, in which Plaintiff alleges that Defendant, as warden, is responsible for prisoners' medical care and needs. (Ex. T, p. 8; Ex. U, p. 23.)

Both exhibits are merely additional avenues in which Plaintiff tendered his claim that Defendant is responsible for his medical needs in her capacity as warden. Neither exhibit supports Plaintiff's allegations that Defendant Mendoza-Powers intentionally interfered with Plaintiff's medical treatment by failing to comply with the Director's Level order to obtain an orthopedic consult for Plaintiff, and that Plaintiff suffered further injury as a result. (Amend. Comp., 16:25-18:13.) "[T]here is no pure *respondeat superior* liability under § 1983, [and] a supervisor [may only be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). The fact that Defendant Mendoza-Powers was the warden at Avenal during the events in question does not provide a basis upon which to impose liability under section 1983. There is no evidence that Defendant Mendoza-Powers knowingly disregarded an excessive risk to Plaintiff's health stemming from the delay in Plaintiff's orthopedic consult, Farmer, 511 U.S. at 837, and Defendant is entitled to judgment as a matter of law.

### D. Defendant Madruga

Finally, Defendant Madruga responded to the inquiry from the Director's Level of review concerning Plaintiff's inmate appeal. The undisputed facts are as follows. The appeal, log number

ASP 05-1644, was submitted to the Director's Level for review by Plaintiff on September 25, 2005. (Doc. 50, P. Ex. P, p. 33.) Plaintiff stated in the appeal that he was referred to an orthopedic surgeon for further evaluation on July 22, 2005, but had not yet been seen, and that he was in severe pain and could not walk. (Id.) On October 26, 2005, Director's Level examiner B. Sullivan spoke with Defendant Madruga, Medical Appeals Analyst for Avenal, and was informed that medical staff was having some difficulty scheduling the appointment because there had been no responses to inquires to different orthopedic facilities. (P. Ex. Q, pp. 135-137; Def. Ex. D, Madruga Dec., ¶¶9-13 & Attach. A.) Plaintiff's appeal was granted in part at the Director's Level and medical staff was directed to schedule an appointment for Plaintiff with an orthopedist as expeditiously as possible. (P. Ex. Q; Def. Ex. D, Attach. A.) Plaintiff was subsequently transferred from Avenal on December 12, 2005. (Amend. Comp., 5:25-26.)

Under section 1983, Plaintiff is required to show that Defendant Madruga (1) acted under color of state law, and (2) committed conduct which deprived Plaintiff of a federal right. Hydrick, 500 F.3d at 987. "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Id. at 988 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

///

There is simply no evidence that Defendant Madruga knowingly disregarded an excessive risk to Plaintiff's health. Defendant Madruga, in the capacity of an appeals coordinator, was contacted for information regarding the status of Plaintiff's pending orthopedic consult. Defendant looked into the issue and communicated the status. There is no evidence that Defendant Madruga was a member of the medical staff responsible for treating Plaintiff's medical issues or that Defendant Madruga held a position of authority such that Defendant could effect the orthopedic consult. See Jett, 439 F.3d at 1098 (citing Moore v. Jackson, 123 F3d 1082, 1087 (8th Cir. 1997)) (prison *administrators* are liable for deliberate indifference if they knowingly fail to respond to requests for help). Although Plaintiff alleges in his amended complaint that Defendant intentionally interfered with Plaintiff's treatment by failing to comply with the Director's Level order to obtain an orthopedic consult for Plaintiff, and that Plaintiff suffered further injury as a result, Plaintiff has not submitted any evidence supporting his allegations, and the documentary evidence submitted by both sides demonstrates that Defendant Madruga's involvement was limited to responding to the Director's Level inquiry. This is insufficient to support a claim that Defendant Madruga acted with deliberate indifference. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (causing or participating in a constitutional violation provides a basis for imposing liability, but involvement in ruling on an administrative complaint does not cause or contribute to the violation). Defendant is entitled to judgment as a matter of law.

### V. Conclusion and Recommendation

For the reasons set forth herein, the Court finds that Defendant Smith did not meet his burden as the moving party and is not entitled to summary judgment on the claim against him. However, Plaintiff did not raise a triable issue of fact on his claims against Defendants Jackman, Mendoza-Powers, and Madruga, and they are entitled to judgment. Accordingly, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed May 20, 2008, be GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants Jackman, Mendoza-Powers, and Madruga's motion for summary adjudication on the claims against them be GRANTED; and

///

2.  Defendant Smith's motion for summary adjudication on the claim against him be DENIED; and

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 13, 2009**              /s/ Sandra M. Snyder
                                   UNITED STATES MAGISTRATE JUDGE