# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ELONZA JESSE TYLER,

               Plaintiff,

    v.

R. DAVIS, M.D., et al.,

               Defendants.

_____/

CASE NO. 1:06-cv-00092-AWI-SMS PC

FINDINGS AND RECOMMENDATIONS
RECOMMENDING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT
BE DISREGARDED, AND DEFENDANT
DAVIS'S MOTION FOR SUMMARY
JUDGMENT BE GRANTED

(Docs. 59, 60 and 61)

OBJECTIONS DUE WITHIN THIRTY DAYS

**Findings and Recommendations on Cross-Motions for Summary Judgment**

## I.    Procedural History

      Plaintiff Elonza Jesse Tyler, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 27, 2006.  This action is proceeding on Plaintiff's amended complaint, filed September 15, 2006.  Following resolution of Defendants Smith, Jackman, Mendoza-Powers, and Madruga's motion for summary judgment on March 12, 2009, this action is proceeding on Plaintiff's remaining claims against Defendant Smith, a staff physician, and Defendant Davis, the former Chief Medical Officer, for acting with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment.  The events left at issue in this action allegedly occurred at Avenal State Prison in 2005.

      On March 20, 2009, Defendant Davis filed a motion for summary judgment.  (Doc. 59.) Plaintiff filed a cross-motion for summary judgment and an opposition to Defendant's motion on

1   April 3, 2009.[1]  (Doc. 60.)  On April 9, 2009, Plaintiff filed an amended cross-motion for summary

2   judgment and opposition.[2]  (Doc. 61.)  Defendant file a reply and an opposition to Plaintiff's cross-

3   motion on May 12, 2009, and Plaintiff filed a reply on June 5, 2009.  (Docs. 67, 68.)

4   **II.    Plaintiff 's Cross-Motion for Summary Judgment**

5           Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

6   as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

7   Civ. P. 56(c).  On his cross-motion for summary judgment, Plaintiff bears the burden of

8   demonstrating that  "no reasonable trier of fact could find other than for [Plaintiff]."  Calderone v.

9   United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment

10  Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)).  This requires

11  Plaintiff to show that there are no triable issue as to the matters alleged in his amended complaint,

12  id., by establishing beyond controversy every essential element of his Eighth Amendment claim

13  against Davis, Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Fontenot v. Upjohn Co., 780

14  F.2d 1190, 1194 (5th Cir. 1986).  Plaintiff's evidence is judged by the same standard of proof

15  applicable at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

16          Although entitled as a cross-motion for summary judgment and an opposition, Plaintiff's

17  filing consists of his arguments in opposition to Defendant's motion for summary judgment along

18  with a bare request that summary judgment be entered in his favor.  Plaintiff did not comply with

19  Local Rule 56-260(a), which requires that "[e]ach motion for summary judgment or summary

20  adjudication shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate

21  discretely each of the specific material facts relied upon in support of the motion and cite the

22  particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other

23  document relied upon to establish that fact."

24  _____

25      [1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the

26  Court in an order filed on April 25, 2007.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 14.)

27      [2] Plaintiff submitted an amended cross-motion and opposition due to typographical errors and misplaced
    exhibits.  However, Plaintiff failed to sign the amended filing, and it cannot be considered by the Court.  The Court

28  is able to and will overlook Plaintiff 's typographical errors and misplaced exhibits in considering the original cross-
    motion and opposition.

1    Further, Plaintiff's arguments are couched entirely in terms of opposing Defendant's motion

2    and raising triable issues of fact, and do not support a cross-motion for summary judgment, which

3    would require Plaintiff to demonstrate that there are no triable issues of fact and he is entitled to

4    judgment as a matter of law.  Therefore, it is the recommendation of the Court that Plaintiff's cross-

5    motion for summary judgment be disregarded, and the filing be treated solely as an opposition to

6    Defendant's motion for summary judgment.  Because of this recommendation, the Court will not

7    consider Defendant's supplemental evidence, submitted in opposition to Plaintiff's purported cross-

8    motion.

9    **III.    Summary Judgment Standard**

10    Summary judgment must be entered, "after adequate time for discovery and upon motion,

11    against a party who fails to make a showing sufficient to establish the existence of an element

12    essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex

13    Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).  The "party seeking summary judgment

14    bears the initial responsibility of informing the district court of the basis for its motion, and

15    identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions

16    on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

17    issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil

18    Procedure).

19    If the moving party meets its initial responsibility, the burden then shifts to the opposing

20    party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

21    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  In attempting to

22    establish the existence of this factual dispute, the opposing party may not rely upon the denials of

23    its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

24    admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P.

25    56(e); Matsushita, 475 U.S. at 586 n.11.

26    A verified complaint in a pro se civil rights action may constitute an opposing affidavit for

27    purposes of the summary judgment rule, where the complaint is based on an inmate's personal

28    knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833

3

1  F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir.

2  1985); Fed. R. Civ. P. 56(e).  Plaintiff's amended complaint is verified and will be considered by the

3  Court in resolving Defendant's motion to the extent that it sets forth admissible facts.  The parties

4  bear the burden of supporting their motions and oppositions with the papers they wish the Court to

5  consider and/or by specifically referencing any other portions of the record they wish the Court to

6  consider.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The

7  Court will not undertake to mine the record for triable issues of fact.  Id.

8  **IV.    Defendant's Motion**

9          **A.    Summary of Claim[3]**

10          On September 4, 2003, while working at his prison job, Plaintiff slipped and injured his left

11  knee, causing severe pain and swelling.  Plaintiff was provided with pain medication, a knee brace,

12  and a cane, and at the time of his transfer to Avenal State Prison (ASP) on March 24, 2004, was

13  barely able to walk.  In May 2004, Plaintiff was designated as mobility impaired and provided with

14  a wheelchair.  Plaintiff underwent knee surgery on March 17, 2005.

15          Plaintiff alleges that Defendant Davis, who was the Chief Medical Officer (CMO) at ASP

16  at that time, interfered with the course of treatment prescribed for Plaintiff, and rescinded the

17  medical order directing that Plaintiff be transferred to a medical facility.  Plaintiff further alleges that

18  although Defendant partially granted a referral to send Plaintiff to an orthopedic specialist, he failed

19  to follow through with the referral, leaving Plaintiff unable to walk and in severe pain.  Plaintiff

20  alleges that as CMO, Defendant was responsible for the system-wide deficiencies which led to the

21  violation of Plaintiff's constitutional rights.

22  ///

23  ///

24  ///

25

26

27

28         [3] Court document 10.

**B.** **Undisputed Facts**[4]

1.  In September 2003, Plaintiff, an inmate incarcerated at Folsom State Prison, hurt his left knee while working in the kitchen.

2.  On March 15, 2005, while housed at ASP, Plaintiff received surgery on his knee.

3.  Medical staff at ASP provided post-operative care.

4.  Plaintiff submitted an inmate appeal claiming that R. Jackman, his physical therapist, lacked the necessary equipment to provide Plaintiff with meaningful physical therapy.

5.  Plaintiff requested that Mr. Jackman be provided with any and all necessary aids to promote physical therapy, or in the alternative, that Plaintiff be transferred to the California Medical Facility.

6.  At the first level of review, Plaintiff was evaluated by Dr. Douglass, a staff physician at ASP.

7.  Dr. Douglass reviewed the physical therapy notes in Plaintiff's medical file, including Mr. Jackman's notes.

8.  Mr. Jackman's notes conveyed his impression that the equipment as ASP was adequate to provide Plaintiff with the care he needed and that Plaintiff may benefit from a second opinion from another physical therapist if Plaintiff felt dissatisfied with his progress.

9.  Plaintiff's appeal was partially granted at the first level of review to the extent that a request was submitted for a second opinion by a physical therapist, pending approval by the Medical Authorization Review Committee.

10. Defendant Davis, who was the CMO at ASP, reviewed Plaintiff's appeal at the second level of review.

11. Defendant reviewed Plaintiff's medical record and the previous review by Dr. Douglass, and determined that Mr. Jackman was providing Plaintiff with adequate medical treatment.

---

[4] In addressing Defendant's proposed undisputed facts, Plaintiff cites to Defendant's Memorandum of Points and Authorities rather than the Statement of Undisputed Facts. However, in comparing the two along with Plaintiff's statement, the Court has determined that Plaintiff does not dispute the any of the facts set forth by Defendant as undisputed, and therefore, Defendant's statement of undisputed facts is adopted. (Doc. 60, 3:3-15.) Plaintiff does dispute Defendant's characterization of Plaintiff's claim as solely premised on Defendant's role as a decision maker in the appeals process. (Id., 3:14-15.) However, that statement is argument and was not proffered as an undisputed fact.

12. With respect to Plaintiff's request for a transfer to another institution, Defendant noted that the Health Care Manager at ASP had already determined that transferring Plaintiff was not a medical necessity, and the request was denied.

13. Defendant partially granted Plaintiff's appeal, noting that Plaintiff was to be referred back to an orthopedist to further evaluate Plaintiff's progress.

### C. Discussion

#### 1. Defendant's Position

Defendant argues that he is entitled to judgment as a matter of law because Plaintiff's sole claim against him arises from his role in considering and resolving Plaintiff's inmate appeal at the second level of review, which provides no basis for the imposition of liability under section 1983. On June 22, 2005, Plaintiff submitted a "Reasonable Accommodation or Modification Request" form (CDC 1824) in which he claimed he was not benefitting from physical therapy because his therapist, Mr. Jackman, was restricted in his ability to provide Plaintiff with meaningful physical therapy. (Motion, Doc. 59-3, Attachment A, court record p. 9.) Plaintiff requested that Mr. Jackman be provided with the necessary aids, equipment, and facility to provide Plaintiff with the level of treatment that would best promote his recovery. (Id.) In the alternative, Plaintiff requested that he be transferred to a prison with a physical therapy program, and identified the California Institution for Men and the California Medical Facility as two such prisons. (Id.)

At the first level of review, Plaintiff's appeal was evaluated by Dr. Douglass, a staff physician, who reviewed the physical therapy notes in Plaintiffs's medical file, including Mr. Jackman's notes. (Undisputed Facts 6, 7; Attach. A, c.r. pp. 7-8.) In the appeal decision, dated August 12, 2005, Dr. Douglass stated that it appeared Mr. Jackman felt the resources at ASP were adequate for Plaintiff's needs, but recommended a second opinion by another physical therapist, partly due to Plaintiff's dissatisfaction with his progress. (U.F. 8; Attach. A, c.r. p. 8.) Dr. Douglass partially granted Plaintiff's appeal to the extent that a request for a second opinion by a physical therapist was submitted and was pending approval by the Medical Authorization Review Committee. (U.F. 9; Attach. A, c.r. p. 8.) Further, a follow-up with an orthopedic surgeon was requested and pending scheduling by the surgeon. (Attach. A, c.r. p. 8.)

On August 18, 2005, Plaintiff filed an inmate appeal form (CDC 602) seeking a second-level review.[5] (Id., c.r. pp. 5-6.)  Plaintiff stated that he had not progressed with his physical therapy, and some of Mr. Jackman's exercises were starting to cause him pain and aggravate his injuries.  (Id.)  As relief, Plaintiff requested to know what date he was scheduled for a consultation with an orthopedic surgeon.  (Id.)

Defendant reviewed Plaintiff's medical record and the previous decision by Dr. Douglass.  (U.F. 11; Attach. A, c.r. pp. 11-12.)  Defendant stated in the written appeal decision, dated September 13, 2005, that Plaintiff 's request for a transfer had been taken under consideration by the Health Care Manager, who determined that the transfer was not a medical necessity, and the previously written transfer chrono had been therefore rescinded.  (U.F. 12, Attach. A, c.r. p. 12.)  Defendant partially granted Plaintiff 's appeal in that Plaintiff was referred back to an orthopedist to further evaluate his progress.  (U.F. 13, Attach. A, c.r. p. 12.)

## 2.    Plaintiff's Position

In his opposition, Plaintiff argues that as CMO, Defendant was in charge of the entire health care operation at ASP and is responsible for the systematic deficiencies that caused Plaintiff to suffer unnecessary pain and injury.  (Doc. 60, Opp., c.r. p. 5, ¶1.)  Plaintiff argues that as CMO, Defendant was responsible for the interference with and discontinuation of Plaintiff 's prescribed medical treatment by other ASP medical staff members, the temporary discontinuation of Plaintiff's physical therapy specifically.[6]  (Id.)  Plaintiff argues that Defendant failed to provide adequate medical care in the form of physical therapy once it was prescribed, and stopped Plaintiff's physical therapy at a prison medical facility, choosing instead to have Plaintiff treated at ASP, which did not have any

---

[5] Both the "Reasonable Accommodation or Modification Request" and the inmate appeal form parts of the same appeal, log number ASP 05-01654.

[6] For the purpose of clarification only, the Court takes judicial notice of the following facts offered in support of the previous motion for summary judgment, filed by Defendants Smith, Jackman, Mendoza-Powers, and Madruga.  Because ASP did not have a physical therapy program, Defendant Smith, Plaintiff's treating physician, recommended that Plaintiff be transferred to a medical facility with a physical therapy program, although Defendant Smith was not authorized to actually initiate transfers.  (Doc. 55, F&R, 5:18-6:2.)  Plaintiff was scheduled to be sent to California State Prison-Corcoran three times a week for physical therapy, but it was discontinued because ASP did not have the resources to send Plaintiff to another prison three times a week.  (Id.)  When Defendant Jackman was brought in to provide physical therapy at ASP in June 2005, Defendant Smith issued a medical chrono for Plaintiff to see Mr. Jackman.  (Id.)

physical therapy equipment. (<u>Id.</u>, ¶2.) Plaintiff also argues that Defendant failed ensure that he was seen by an orthopedic surgeon without unreasonable delay. (<u>Id.</u>, ¶2.)

### 3. **Findings**

Plaintiff's claim against Defendant arises from the alleged violation of Plaintiff's rights under the Eighth Amendment of the United States Constitution. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u> (citing <u>McGuckin</u> at 1060 (internal quotations omitted)). Where the claim involves a delay in the receipt of treatment or care, the claim is not cognizable unless the delay led to further harm. <u>McGuckin</u> at 1060 (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

Under section 1983, Plaintiff must show that Defendant acted under color of state law, and deprived him of rights secured by the Constitution or federal law. <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff is required to prove that Defendant personally participated in the deprivation of his rights. <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability under section 1983, and therefore, Defendant is only liable for his own misconduct. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948-49 (2009).

1    Generally, "[r]uling against a prisoner on an administrative complaint does not cause or

2   contribute to the violation."  George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007).  Further, the

3   existence of an administrative remedy process does not create any substantive rights and therefore,

4   mere dissatisfaction with the remedy process or its results cannot, without more, support a claim for

5   relief for violation of a constitutional right.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003);

6   Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Massey v. Helman, 259 F.3d 641, 647 (7th Cir.

7   2001).  However, a supervisor may be held liable for the constitutional violations of his or her

8   subordinates if he or she "participated in or directed the violations, or knew of the violations and

9   failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v.

10   Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of

11   Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir.

12   1997).  If that participation, direction, or knowledge occurred within the context of handling an

13   appeal, merely claiming that there exists no constitutional right to an appeals process is not

14   necessarily a shield to liability.  The critical inquiry is whether or not the supervisor directly

15   participated in the violations complained of or had knowledge that violations were occurring but

16   failed to intervene.  Taylor, 880 F.2d at 1045; also Jett at 1098.

17    Here, Defendant presents evidence that his involvement in Plaintiff's medical care was

18   limited to addressing and resolving Plaintiff's appeal at the second level of review, which included

19   reviewing the first level decision.  Defendant's position is supported by a review of Plaintiff's appeal

20   and the responses to the appeal.  Although Plaintiff disputes this characterization of the basis for his

21   claim against Defendant, he has presented no evidence to the contrary.

22    Plaintiff seeks to extend liability to Defendant for all of the problems he encountered at ASP

23   with respect to his knee injury, but Defendant simply cannot be held liable under section 1983 for

24   all that Plaintiff believes was wrong with his medical treatment merely because of Defendant's

25   position as CMO or merely because Defendant reviewed and issued a decision on Plaintiff's appeal.

26   Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must submit evidence demonstrating that there was deliberate

27   indifference to his serious medical needs, and that Defendant was either directly involved or was on

28   notice of the violations but failed to intervene.

1    Although Plaintiff argues that his constitutional rights were violated as a result of the
2  systematic medical care deficiencies at ASP, there is no evidence establishing that Plaintiff's rights
3  were violated as a direct result of a deficiency in the medical care system, and that Defendant knew
4  about or created that deficiency but failed to rectify it.  General arguments or accusations are not
5  sufficient to support Plaintiff's claim.  Further, although Plaintiff argues that Defendant was involved
6  in the discontinuation of his physical therapy at California State Prison-Corcoran and the subsequent
7  initiation of substandard therapy at ASP, Plaintiff has presented no evidence linking Defendant to
8  these decisions or demonstrating that the decisions constituted deliberate indifference to his medical
9  needs.  Plaintiff's disagreement with treatment decisions is not sufficient to support an Eighth
10 Amendment claim.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

11    With respect to Plaintiff's allegation that Defendant interfered with the course of treatment
12 prescribed for Plaintiff and cancelled Plaintiff's pending transfer to a medical facility, there is no
13 evidence that Defendant interfered with a prescribed course of treatment, or that the alleged
14 interference "was medically unacceptable under the circumstances" and chosen "in conscious
15 disregard of an excessive risk to plaintiff's health," Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.
16 1986) (internal citations omitted), which must be shown to support an Eighth Amendment claim.
17 Further, the uncontroverted evidence demonstrates that the Acting Health Care Manager considered
18 Plaintiff's request for a transfer, and determined it was not medically necessary.  Defendant
19 documented this information in his response to Plaintiff's appeal.  Neither Plaintiff's disagreement
20 with that determination nor Defendant's involvement in relaying that message via an inmate appeal
21 provides a basis for the imposition of liability under section 1983.

22    Finally, there is no evidence to support Plaintiff's claim that Defendant violated his rights
23 under the Eighth Amendment by failing to ensure that he was seen by an orthopedic specialist.
24 Defendant informed Plaintiff in the appeal decision that Defendant Dr. Smith's referral to an
25 orthopedist was approved by the Medical Authorization Review Committee, and that Plaintiff would
26 be scheduled in the near future.  Plaintiff presents no evidence that Defendant was responsible for
27 ensuring that the appointment was scheduled and that his failure to do so rose to the level of
28 ///

1   deliberate indifference, or that Defendant knew his subordinates were acting with deliberate

2   indifference by failing to schedule the appointment but failed to intervene.

3       Although Plaintiff argues that Defendant was ordered in the Director's Level response to his

4   appeal to provide Plaintiff with immediate orthopedic care and Defendant failed to comply with that

5   order, the evidence shows an acknowledgment that medical staff were having some difficulty getting

6   an appointment scheduled, and a directive to medical staff to schedule Plaintiff with an orthopedist

7   as expeditiously as possible.  (Doc. 60, Ex. F., c.r. pp. 81-82.)  This evidence demonstrates that

8   between the issuance of Defendant's second level decision on September 13, 2005, and the

9   Director's Level decision on October 26, 2005, Plaintiff had not received an orthopedic consultation.

10  However, it does not support Plaintiff's claim that Defendant disobeyed a direct order to him and

11  in doing so, knowingly disregarded an excessive risk to Plaintiff's heath.  Farmer v. Brennan, 511

12  U.S. 825, 837, 114 S.Ct. 1970 (1994).

13      Further, Plaintiff has submitted no admissible evidence that the delay in getting the

14  orthopedic consultation caused further harm.  On March 3, 2006, an x-ray of Plaintiff 's knee showed

15  significant worsening since the x-ray previously taken on September 10, 2003, a time period of

16  approximately two and one-half years.  (Doc. 60, Ex. G, c.r. p 85.)  However, the record does not

17  provide any insight into the reason for the worsening, or demonstrate that the delay in obtaining the

18  orthopedic consultation at issue in the complaint, which occurred between 2005 and March 2006,

19  caused further damage.  Plaintiff is not a medical expert and may not offer his own opinion that the

20  delay led to additional, severe injury to both of Plaintiff's knees and to a general deterioration in his

21  health.

22      In conclusion, "[d]eliberate indifference is a high legal standard."  Toguchi v. Chung, 391

23  F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware

24  of the facts from which the inference could be drawn that a substantial risk of serious harm exists,'

25  but that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If

26  a prison official should have been aware of the risk, but was not, then the official has not violated

27  the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting Gibson v. County of Washoe,

28  Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  Further, as a prison administrator, Defendant may

only be held liable for the violation of Plaintiff's constitutional rights if he personally "participated in or directed the violations, or knew of the violations [committed by subordinates] and failed to act to prevent them." Taylor at 1045. Plaintiff has not presented any admissible evidence showing that Defendant was directly involved in a violation of Plaintiff's rights or knew that his subordinates were violating Plaintiff's rights but failed to intervene. Because Plaintiff has not raised any triable issues of material fact as to his Eighth Amendment medical care claim against Defendant, Defendant is entitled to judgment as a matter of law.

**V.   Conclusion and Recommendation**

The Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim against him. Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's cross-motion for summary judgment, filed April 3, 2009, be DISREGARDED;

2. Defendant Davis's motion for summary judgment, filed March 20, 2009, be GRANTED; and

3. This matter be referred back to the undersigned to set for jury trial on Plaintiff's remaining claim against Defendant Smith.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 19, 2009**         /s/ Sandra M. Snyder
UNITED STATES MAGISTRATE JUDGE